IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICK C. LYNN,
        Plaintiff,

vs.                               Case No. 16-3096-JTM-DJW

VALERIE PELTZER, et al.,
        Defendants.

MEMORANDUM AND ORDER

This pro se civil rights complaint was filed by a state prisoner under 42 U.S.C. § 1983 in the District Court of Leavenworth County, Kansas. Defendants thereafter removed the action to federal court under 28 U.S.C. §§ 1441 and 1446. Plaintiff names 30 defendants and asserts that while he was confined at the Lansing Correctional Facility in Lansing, Kansas (LCF), defendants violated his rights under the First, Eighth and Fourteenth Amendments of the U.S. Constitution and under state statutes.[1] He seeks "declaratory judgments" that defendants' acts and omissions violated his federal constitutional and state statutory rights. He also seeks compensatory and punitive damages and costs.

---

[1] Plaintiff cites K.S.A. § 60-102, *et seq.*; "the KTCA"/K.S.A. § 75-6101, *et seq.*; K.S.A. § 21-5705; and K.S.A. § 21-5105. However, he does not quote or summarize any particular provision of a Kansas statute and suggest how his allegations entitle him to relief thereunder. These bald citations do not entitle plaintiff to relief and the court has no authority to construct legal arguments on plaintiff's behalf.

1

This matter is before the court for screening and upon Motions to Dismiss (Dkts. 2, 9) filed by defendants. Also before the court are 15 motions filed by plaintiff (Dkts. 10, 11, 12, 16, 18, 20, 22, 26, 27, 28, 30, 33, 34, 35 and 36); responses by defendants to plaintiff's motions (Dkts. 17, 21, 23); and defendants' Motion to Stay (Dkt. 17). For reasons that follow, the court dismisses this action because Mr. Lynn is a three-strikes litigant, has not paid the filing fee, and does not qualify to proceed without prepayment of the fee.

Given the nature of plaintiff's claims and his federal constitutional assertions under Section 1983, the court determines at the outset that it has subject matter jurisdiction to consider this complaint pursuant to 28 U.S.C. §§ 1331 and 1441. See *Lisenby v. Lear*, 674 F.3d 259, 262 (4th Cir. 2012).[2]

CLAIMS AND ALLEGATIONS IN THE COMPLAINT

As background, plaintiff alleges that "at all times" he was "seriously struggling w/severe cardiac issues" and that defendants were deliberately indifferent to his "heart

---

[2] The Fourth Circuit explained:

> The Supreme Court has stated that "[a]s a general matter, defendants may remove to the appropriate federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.' " *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting 28 U.S.C. § 1441(a)). "The district courts have original jurisdiction under the federal question statutes over cases 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 1331). This Court has likewise averred that "removal is appropriate if the face of the complaint raises a federal question." *Lontz v. Tharp,* 413 F.3d 435, 439 (4th Cir. 2005).

*Id.*

2

attack declarations" and pleas for nitro tablets and medical assistance.[3]  Plaintiff's complaint is replete with conclusory and legalistic claims and phrases but lacking in facts evincing an unconstitutional denial of medical care by each defendant.

DEFENDANTS' MOTIONS TO DISMISS

The court turns to defendants' motions to dismiss.  Defendants move to dismiss this action based on Mr. Lynn's status as a three strikes litigant under federal law.  The "three strikes" statute, 28 U.S.C. § 1915(g), provides:

---

[3] Plaintiff describes three main incidents in his complaint including names and dates.  In May 2014, defendant Scott attempted to give plaintiff "unknown medication."  In June 2014, plaintiff suffered an attack and "begged for nitro for over an hour" from Nurse Ivy who refused and did not notify other infirmary nurse Jimmy.  An inmate aide notified Jimmy who gave plaintiff nitro.  On July 3, 2014, plaintiff underwent emergency quadruple heart bypass surgery.  He was returned to the LCF infirmary to recuperate.  In September 2014, plaintiff "declared having an awful heart attack" to four defendants who refused to call medical emergency code for "several hours."  After the shift change occurred, a code was called.  Plaintiff was "given an EKG," morphine and a "metroprolol cocktail" and taken to the hospital.

Plaintiff purports to "adopt" into his complaint his affidavit and that of another inmate "as if fully set forth here."  While affidavits may be used as evidence of the allegations in the complaint, a plaintiff must state all his claims and supporting facts in the complaint.  Plaintiff alleges in his Affidavit that he suffered "debilitating chest pain attacks" on May 27 and 28, 2014.  He was given nitro, medical emergencies were called, tests were conducted, he was admitted to the infirmary "to await cardiologist appt and be treated" where he continued to have chest pain attacks, and nitro brought his "skyrocketing B/P down."  On May 31, he felt another attack coming and thought "it could be an 'acid reflux' issue."  He asked RN Teddy for Mylanta, but she brought "some foreign pills," which plaintiff refused.  The next morning plaintiff's meds were delayed because Teddy reported his refusal of Tums.  Plaintiff claimed Nurse Teddy tried to poison him and told Dr. Saffo that he refused to have any contact with Teddy.  On June 5, 2014, plaintiff felt the beginnings of another attack, called for a nitro but refused to speak to RN Teddy and instead pleaded for 2 hours for assistance from RN Elbert.  Plaintiff complains that he was denied "conflict free" medical care because Teddy claimed to be his nurse for the night.  Plaintiff made "livid protests" of having invoked his right to refuse treatment from Teddy and told Captain Bailey "standard protocol" allowed another nurse to step in whenever a nurse-patient conflict arose.  Plaintiff also complains that Nurse Teddy denied a nitro saying she must first take his vital signs.  In about 20 minutes RN Elbert Gee took plaintiff's vital signs and gave him nitro and Mylanta.  Plaintiff's allegations indicate that security guards and other personnel came to his cell throughout this time and that he was provided medical attention and treatment from various medical staff including RNs, doctors, and specialists.  They also strongly suggest that plaintiff has at times impeded his own medical care by making unreasonable demands and refusals.

3

> In no event shall a prisoner bring a civil action . . . under this [in forma pauperis] section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Defendants assert that Mr. Lynn may not circumvent the three-strikes provision even though he filed his complaint in state court and defendants subsequently removed it to federal court and paid the filing fee. Defendants cite *Skinner v. Switzer*, 562 U.S. 521 ((2011) as authority for their argument.[4] The specific question of whether a three-strikes litigant circumvents Section 1915(g) following removal from state to federal court was recently addressed in far more detail and answered in the negative in *Evans v. Bristol-Myers Squibb Co,* 2016 WL 3184421, Case No. 16-1039-EFM-GEB (D.Kan. June 8, 2016). The court in *Evans* acknowledged that "no Tenth Circuit case law squarely addresses § 1915(g)'s effect on a prisoner plaintiff who is proceeding *in forma pauperis* in state court[5] and, without paying federal filing fees, is removed to federal court." *Id.* at *3. However, based on the reasoning of two other Circuit Courts of Appeal,[6] it held that three-striker Evans "must prove his right to litigate under §

---

[4] In *Skinner*, the United States Supreme Court reasoned that in the Prisoner Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-66, Congress "placed a series of controls on prisoner suits, constraints to prevent sportive filings in federal court," including Section 1915(g) "to revoke, with limited exception, in forma pauperis privileges for any prisoner who has filed three or more lawsuits" that qualify as strikes under that provision. *Id.* at 535 n. 3.

[5] Plaintiff's allegations indicate that he was granted in forma pauperis status in state court and may have paid a partial fee and some service fees before the action was removed.

[6] The court relied upon two published opinions involving removals from state court of cases filed by three-strikes litigants: *Lisenby*, 674 F.3d at 259 and *Lloyd v. Benton*, 686 F.3d 1225 (11th Cir. 2012). The district courts had remanded to state court reasoning that Section 1915(g) limited defendants' removal

4

1915(g)'s terms." In a similar case, another federal district court after finding that subject matter jurisdiction existed following removal held that "the procedures that apply to a prisoner action filed in this Court require that a determination be made if the action can proceed or if it is precluded by 28 U.S.C. § 1915(g)." *Riggins*, 2012 WL at 5471248.[7] This court agrees with the reasoning in *Lisenby*, *Lloyd*, *Riggins* and *Evans* and based on that reasoning holds that plaintiff may continue to litigate his properly-removed complaint only if he has complied with the three-strikes provision.

Next, the court considers whether Mr. Lynn qualifies under Section 1915(g) to continue to pursue his complaint. Mr. Lynn was long ago designated a three-strikes litigant.[8] Of course, "a 'three strikes' prisoner is not entirely precluded from federal court, but rather, to bring a civil action in forma pauperis in federal court," that prisoner must meet the "procedural requirements" that he "either pre-pay in full all filing fees or make a showing of imminent danger of serious physical injury."[9] *Lisenby*, 674 F.3d at

---

rights. On appeal, the Circuit Courts reversed and directed the district courts to decide the actions in federal court according to federal law. See *Evans* at *4 (citing *Lisenby*, 674 F.3d at 263; *Lloyd*, 686 F.3d at 1228.). In *Lisenby*, the Fourth Circuit rejected the argument that the three-strikes provision in the "PLRA somehow strips a federal court of the subject matter jurisdiction to hear Plaintiff's case." *Lisenby*, 674 F.3d at 263. District courts have since "applied the Fourth and Eleventh Circuits' reasoning by screening a prisoner-plaintiff's complaint under § 1915(g) once properly removed by a defendant to federal court." *Evans* at *5 (citing *Riggins v. Corizon Med. Servs.*, 2012 WL 5471248 at *1 (S.D.Ala. Oct. 19, 2012)); *Riggins v. Kuoy*, 2014 WL 376156 at *3 (S.D. Ala. July 30, 2014); *Harris v. Fla. Dep't of Corrs.*, 2015 WL 1729479 at *3 (N.D. Fla. April 14, 2015)).

[7] The court disagrees with the reasoning in *Howard v. Braddy*, 2013 WL 5461680 at *4 (M.D. Ga. Sept. 30, 2013), where the court declined to apply 1915(g) to a removed federal case initiated by a three striker in state court because the plaintiff was not requesting permission to proceed in forma pauperis.

[8] See e.g., *Lynn v. McClain*, 12 Fed. App'x 676, 679 (10th Cir. 2001)(noting that Lynn's "past civil filings have subjected him to the 'three strike' provisions."); *Lynn v. McClain*, 162 F.3d 1173 (10th Cir. 1998)(finding that Lynn "now has a total of six 'strikes against him").

[9] If Mr. Lynn had paid the filing fee as he warned, he would have been required to file a single,

5

262-63. Mr. Lynn has not prepaid the $400 filing fee even though this civil action has been pending in federal court for over three months. Consequently, he must show that he qualified for the exception to the prepayment requirement in Section 1915(g).

The following standards for qualifying under 1915(g)'s imminent danger exception were plainly set forth in a prior action filed by plaintiff. See *Lynn v. Roberts*, 2011 WL 3667171 at *1-*3 (D.Kan. 2011). There is only one exception to the prepayment requirement in Section 1915(g), and it is available to a prisoner who is under imminent danger of serious physical injury.[10] A court is not required to blindly accept a prisoner's allegations of imminent danger. Instead, the three-strikes plaintiff bears the burden to allege sufficient facts to establish his entitlement to this narrow exception. The court in *Lynn v. Roberts* described the requisite allegations:

> In order to meet the exception, the three-strikes plaintiff is required to provide "specific credible allegations" of imminent physical danger such as "ongoing serious physical injury" or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury."

*Lynn v. Roberts*, at *2 (citing *Strope v. Cummings*, 653 F.3d 1271, 1273 (10th Cir. 2011)(citing *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1176 (10th Cir. 2011)(quoting *Kinnell v. Graves*, 265 F.3d 1125, 1127 (10th Cir. 2001)); see also *Fuller v. Myers*, 123 Fed. App'x 365, 366 (10th Cir. 2005)(citing *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir.

---

complete amended complaint that included no improperly-joined claims or parties and contained all his claims and allegations upon court-approved forms.

[10] Therefore, plaintiff's allegations regarding conditions that involve no conceivable physical danger, such as denial of court access, interference with mail and telephone privileges, denial of writing and legal materials, loss of personal property, stark cell conditions, and perjured disciplinary reports, do not establish the exception. Mr. Lynn's denial of access allegations continue to lack plausibility in any event, given the number of pages he has managed to submit in this case alone. See *Lynn v. Anderson-Varella*, 257 Fed. App'x 80, 86 (10th Cir. 2007). Allegations that correctional officers have spoken in an unprofessional manner or even verbally threatened an inmate, without more, are similarly inadequate.

6

2003)). Vague, conclusory allegations are clearly insufficient. *Hafed*, 635 F.3d at 1180 (citing *White v. Colorado*, 157 F.3d 1226, 1231-32 (10th Cir. 1998)). Plaintiff "should make 'specific reference' to the defendants, the harms and the occasions." *Id.*

Furthermore, "[e]very circuit to have decided the issue so far has concluded that [Section 1915(g)'s] use of the present tense shows that a prisoner must have alleged an imminent danger at the time he filed his complaint." *Id.* at 1179-80; *Abdul-Akbar*, 239 F.3d 307, 313 (10th Cir. 2001)(adopting the construction of Section 1915(g) of the Fifth, Eighth, and Eleventh Circuits, that a prisoner may invoke the "imminent danger" exception "only to seek relief from a danger which is 'imminent' at the time the complaint is filed."); see also *Davis v. Geo Group Corrections, Inc.*, 2016 WL 3128746 (W.D. Okla. May 24, 2016); *Burgess v. Conway*, 631 F.Supp.2d 280, 283 (W.D.N.Y. 2009). "Allegations of past harm do not suffice; the harm must be imminent or occurring at the time the complaint is filed." *Stine v. U.S. Bureau of Prisons*, 465 Fed. App'x 790, 793 (10th Cir. 2012)(citing *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003)). The court in *Lynn v. Roberts* explained this temporal element to plaintiff:

> "The exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct." Furthermore, allegations of past misconduct of defendants and even of past injury to plaintiff are insufficient . . . When the reason that the plaintiff speculates he is in danger of future harm is a pattern of past harassment, he still must show that danger was imminent at the time he filed his complaint. . . .

*Lynn v. Roberts*, at *2. That court further explained that the 1915(g) exception is

> construed narrowly and available only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate." "Congress included an exception to the 'three strikes' rule for those cases in which it

> appears that judicial action is needed as soon as possible to prevent serious physical injuries from occurring in the meantime." As the Third Circuit explained, the "limited exception" created by Congress was "aimed at preventing future harms" which are "about to occur at any moment or that are impending." Accordingly, its availability has been limited to conditions a prisoner faced at the time the complaint was filed, not at some earlier or later time.

*Id.* (Citations omitted).

With regard to assertions of denial of medical treatment in particular, even specific examples of such denials in the past are not sufficient without a showing that serious physical injury is imminent upon filing. *Id.* at *1-*3.

The court has applied the foregoing standards to the complaint and concludes that Mr. Lynn does not qualify for the Section 1915(g) exception. The court searched plaintiff's Verified Complaint and attachments [Notice of Removal (Doc. 1), Attachment B (Doc. 1-2, pgs. 1-49)] for specific facts showing that plaintiff was in imminent danger of serious physical injury in January 2016 when he filed his complaint. The face of the complaint shows that the alleged incidents about which plaintiff complains occurred in 2014. These conditions were faced at a much earlier time than when the complaint was filed. Tellingly, plaintiff seeks a declaratory judgment that his rights were violated by defendants' acts and omissions in 2014 and money damages rather than injunctive relief. Furthermore, plaintiff's own detailed accounts of an ongoing series of treatment and monitoring by nurses, doctors and specialists belies a claim that he is currently in imminent danger. See *White*, 157 F.3d at 1232 (considering prisoner's treatment in concluding he had not raised a "credible allegation" of imminent danger). The court

8

finds that plaintiff has alleged no facts in his complaint showing that he was in imminent danger on the date he filed this action.

Had the court determined that plaintiff qualified to proceed on the instant complaint, it would still dismiss this action pursuant to its screening obligation under 28 U.S.C. § 1915(e)(2)(B). Plaintiff fails to state facts to support a constitutional claim of denial of medical treatment in 2014 because he was provided, rather than denied, treatment. At most, his allegations amount to claims of delayed treatment or negligence. Mr. Lynn is not entitled to the treatment or provider of his choice. He may not impede his treatment by refusing to cooperate or to accept treatment and thereafter viably assert liability on the part of his caretakers.

OTHER FILINGS

In this case, Mr. Lynn continues his customary abusive litigation practices, which are apparent from his prior cases. A vexatious litigant often files a morass of claims against numerous defendants in a rambling, lengthy complaint. Here, Mr. Lynn has named 30 defendants presents an unformed loose narrative in his complaint and affidavit about events in 2014. Mr. Lynn's filings are even more abusive than those of the typical three-striker because he uses lawsuits and grievances in attempts to manipulate, intimidate and harass others.[11] Mr. Lynn adds yet another dimension to

---

[11] As long ago as 1999, the Kansas Court of Appeals imposed filing restrictions upon Mr. Lynn after finding that he was "using the suits as a means to attempt to harass the victim, witnesses, police investigators, judges, and others involved in his case." *State v. Lynn*, Case No. 80-028 (Kan.App. April 9, 1999). Defendants complain in their motions regarding Mr. Lynn's "continued harassment of prison staff" including defendants. Numerous prior cases have been filed by Mr. Lynn in this court over a

his abuse of the judicial process with his inappropriate motions practices. In this case, he has inundated the court and the opposing parties with numerous additional filings that are clearly inappropriate. Nonetheless, defendants dutifully attempted to reply and the court has reviewed each of plaintiff's additional filings. Most of these filings are inappropriate, confusing and obstructive because they are not proper amended complaints and yet contain jumbled streams of additional allegations and claims that were not in and do not even relate to the original complaint. As the court in *Lynn v. Roberts* noted, Mr. Lynn "has been informed in other cases that if he wants to raise any claims, allege any facts, or present any arguments," he "must actually include them in his complaint," and "in order to add any claim, allegation or argument that is not in the complaint," he must submit a proper, complete amended complaint upon approved forms. Mr. Lynn continues to ignore this requirement to his detriment as well as that of the court and defendants. In addition, most of plaintiff's other filings are not proper motions because they are not distinct motions with descriptive titles and are not limited to a clear statement of the requested court action along with the factual and legal grounds showing movant's entitlement to the requested action. See Federal Rules of Civil Procedure, Rule 7(b). Plaintiff has added no facts to his complaint with any of his

---

number of years and even a cursory examination of his voluminous filings and exhibits reveals that he has repeatedly threatened prison officials and employees with lawsuits and has filed lawsuits in an attempt to coerce and harass them to meet his demands to provide the changes or attention he deems necessary by those staff persons he deems agreeable. This case is no exception. For example, in a main 2014 incident, Mr. Lynn alleges that he refused medication and attention from the female nurse on duty while "writhing" in pain on the floor and despite "a massive (and debilitating) heart attack happening," and then asserts denial of medical attention because a different nurse wasn't summoned immediately to provide the demanded attention. He also relies upon his "right" to no further contact with a particular nurse and maligns two other female nurses.

10

additional filings. The court would be justified in holding that plaintiff's "other filings" are so inappropriate that they should be disregarded. Mr. Lynn is no stranger to this court and has heard all this before numerous times. However, the court determines instead that as a consequence of the dismissal of this action under Section 1915(g), plaintiff's pending motions, whether or not properly described, have been rendered moot. Thus, the court denies plaintiff's pending motions and other filings he has designated notices and objections as moot.[12]

The court briefly comments upon a few of plaintiff's other filings. In some, plaintiff asserts that he is giving "notice" of additional conditions or providing supporting allegations to show imminent danger. Plaintiff was required to show imminent danger in his complaint. He did not properly amend his complaint to include any additions presented in his other filings.

Plaintiff was granted two extensions of time to respond to defendants' motions to dismiss and seeks a third extension of thirty days. No purpose would be served by allowing plaintiff time to submit another filing. Sixty days have passed since this motion was filed, and plaintiff has never submitted a response to defendants' dispositive motions. Furthermore, plaintiff has imbedded arguments with citations against defendants' motions among his hodgepodge allegations in some of his other filings, but these arguments are not convincing. Plaintiff's allegations of denial or loss of some of his legal materials do not entitle him to an extension because he has not

---

[12] In addition, the court directs the clerk to strike plaintiff's "Motion for Disqualification of Judge Sam Crow" (Doc. 20) and to place this document under seal. This motion is clearly moot due to the reassignment of this action and contains inappropriate and despicable language and content.

alleged facts indicating that he needed any particular legal materials to prepare an appropriate response.

Finally, the court acknowledges the severity of some conditions of Mr. Lynn's confinement.  In some of his other filings, plaintiff claims that the conditions he has endured for years in slam cells and the "prison rotation" transfer scheme to which he is subjected every 3-4 months are unconstitutional.  He claims that the rotation transfer scheme has each time culminated in force being used to physically move plaintiff into his slam cell and that the force has been excessive despite plaintiff's "passive resistance."[13]  Plaintiff mentioned these potential claims in *Lynn v. Roberts*, 2011 WL 3667171 (D.Kan. 2011).  In this case once again, plaintiff did not file his complaint based on alleged multiple incidents of excessive force or long-term slam cell conditions. Harsh conditions like these, if presented in a proper complaint with specific references to the defendants involved, the surrounding circumstances, the harms, and dates, could potentially reflect imminent danger of serious physical injury.  However, Mr. Lynn does not qualify to litigate the claims in his original complaint by raising these unrelated claims in a subsequent filing that is not a proper amended complaint.

---

[13]     Mr. Lynn is undoubtedly a dangerous, disruptive and incorrigible inmate.  In a prior case, he was noted to have nearly 300 disciplinary convictions, and the prison rotation scheme to which he has been subjected since April 2009 had generated over 200 of them.  *Lynn v. Roberts*, 2011 WL 3667171 at *7, *10. In a more recent case, the court found that in Lynn's motion among his "usual morass of vague and repetitive allegations" he claimed "11 criminal batteries/excessive uses of force at LCF during 3-18-15, 6-1-15, and 8-1-15" and excessive force on March 21, 2016. See *Lynn v. Goddard*, Case No. 16-3048-SAC-DJW (Doc. 22) pgs. 3-4 (D.Kan. April 7, 2016).  Furthermore, that court found that Lynn's allegations suggested that he precipitated each alleged incident of excessive force by refusing to obey the orders of prison staff to submit to security restraints, to walk to his assigned cell, or to enter his slam cell.  *Id*. at 4.  Mr. Lynn was reminded that he could "easily avoid disciplinary convictions and physical confrontations if he would simply follow the orders of prison officials."  *Id*. at 5.

Plaintiff's two "Notice(s) of Motion and Motion for Leave to Prosecute Attached Supplemental Complaint" are not proper supplements. These filings may set out transactions, occurrences, or events that "happened after the date of original complaint." However, the events alleged are totally unrelated to the 2014 incidents on which the original complaint is based. They are not alleged to have involved all 30 named defendants and could not be properly joined in this action. These filings are simply two more improper attempts by plaintiff to amend his complaint without submitting a complete and proper amended complaint.

Because the court dismisses this action under 28 U.S.C. § 1915(g), it need not determine defendants' remaining arguments for dismissal under Rule 12(b), and defendants' motion to stay is denied as moot.

WARNING TO PLAINTIFF

Mr. Lynn, despite his three-strikes status, continues to abuse judicial processes in both the state and federal courts. Fifteen years ago, he was "cautioned" by the Tenth Circuit that his continuing to engage "in a pattern of litigation activity which is manifestly abusive . . . will result in additional filing restrictions applicable to any type of civil case." *Lynn v.* McClain, 12 Fed.Appx. at 679. The court now puts Mr. Lynn on notice that it will impose filing restrictions similar to or even more stringent than those the state court previously imposed, if he continues to file federal court actions for the

apparent purposes of intimidating and harassing state officials and prison staff and continues to submit improper and abusive pleadings and motions.[14]

For all the foregoing reasons, the court dismisses this action because plaintiff is a three-strikes litigant who has not paid the filing fee and did not show that he is in imminent danger of serious physical injury in his complaint. For the same reasons, the court certifies that any appeal of this decision is not taken in good faith.

ACCORDINGLY IT IS ORDERED this 29th day of July 2016 that defendants' Motions to Dismiss (Dkts. 2, 9) are sustained, and that this action is dismissed without prejudice and all relief is denied.

IT IS FURTHER ORDERED that plaintiff's pending motions (Dkts. 10, 11, 12, 16, 18, 20, 22, 26, 27, 28, 30, 33, 34, 35, 36) are denied as moot, and that defendants' Motion for Stay (Dkt. 17) is denied as moot.

IT IS FURTHER ORDERED that the clerk is to strike Document 20 from the record and to place this document under seal.

IT IS FURTHER ORDERED that any appeal of this matter is certified as not taken in good faith.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

---

[14] "Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances." *Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010); *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989). "A district court has power under 28 U.S.C. § 1651(a) to enjoin litigants who abuse the court system by harassing their opponents." *Id.*

14